**Paul J. KOCIELKO, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

**No. 20A03–1002–CR–218.**

Court of Appeals of Indiana.

Dec. 2, 2010.

home admitted at the suppression hearing. The photographs submitted in the record on appeal are black and white copies.

Kenneth R. Martin, Goshen, IN, Attorney for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, Michael Gene Worden, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BAILEY, Judge.

### Case Summary

Appellant–Defendant Paul J. Kocielko ("Kocielko") appeals his convictions for two counts of Sexual Misconduct with a Minor,[1] one count as a Class B felony, and one count as a Class C felony, and his adjudication as a habitual offender.[2] We affirm the Class B felony conviction and habitual offender adjudication but remand to the trial court with instructions to set aside the Class C felony conviction.

### Issues

Kocielko presents six issues for review:

---

1. Ind.Code § 35–42–4–9.

2. Ind.Code § 35–50–2–8.

I. Whether his retrial violated double jeopardy prohibitions because an acquittal on one count in his first trial acquitted him of the other counts against him;

II. Alternatively, assuming his retrial was permissible, whether double jeopardy principles preclude his convictions on multiple counts as opposed to one count;

III. Whether he is entitled to a new trial because of undue prejudice from trial safety measures including a hidden leg restraint and police officer seating arrangements;

IV. Whether he knowingly and intelligently waived his right to be represented by counsel;

V. Whether he was entitled to a DNA expert at public expense; and

VI. Whether his sentence is inappropriate in light of the nature of the offense and his character.

## Facts and Procedural History

On August 8, 2007, Kocielko took his fourteen-year-old stepdaughter, A.Q., to a Knights Inn in Elkhart and rented a room with one double bed. Kocielko gave A.Q. several drinks of peppermint flavored whiskey until A.Q. was dizzy and "out of it, drunk." (Tr. 1719.) After the two watched television and exchanged back rubs, Kocielko stated that he was tired and turned out the lights.

A.Q. was lying on the bed with her back to Kocielko when Kocielko took her left hand, placed it on his penis, and "moved it around in a circular motion." (Tr. 1722.) Kocielko pulled down A.Q.'s basketball shorts and underwear to her mid-thigh. He then penetrated A.Q.'s anus with his penis causing her "horribly bad" pain. (Tr. 1724.)

The next day, Kocielko took A.Q. to her step-grandparents' house. A.Q. bathed, changed clothes, and hid the bloodied underwear that she had worn the night before. Initially, Kocielko and A.Q. agreed not to tell anyone about the drinking or sexual activity and A.Q. assured Kocielko that she had thrown away her underwear. However, after a few days passed, A.Q. told her aunt about the molestation and showed her the previously-hidden underwear. With the assistance of her aunt and mother, A.Q. went to the police station, handed over the underwear, and gave a statement implicating Kocielko.

On August 27, 2007, Kocielko was charged with three counts of Sexual Misconduct with a Minor, with one count alleging that Kocielko committed deviate sexual conduct upon A.Q., one count alleging that Kocielko submitted to fondling of his penis by A.Q., and one count alleging that Kocielko fondled A.Q. by touching her breast. The State also alleged Kocielko is a habitual offender. Kocielko was brought to trial on October 29, 2007. The trial ended with a hung jury as to the first two counts and an acquittal on the count of Sexual Misconduct with a Minor by fondling of A.Q.'s breast.

Kocielko's retrial, as to the counts involving deviate sexual conduct and fondling by touching of Kocielko's penis, commenced on January 4, 2010. Kocielko elected to represent himself, with stand-by counsel having been appointed to conduct legal research. The jury found Kocielko guilty of both charges, and also found him to be a habitual offender.

On February 4, 2010, Kocielko was sentenced to twenty years imprisonment on Count I (deviate sexual conduct), enhanced by thirty years, and eight years on Count II (fondling), enhanced by thirty years. The trial court ordered the sentences to be served concurrently, providing for an ag-

gregate sentence of fifty years. Kocielko appeals.

## Discussion and Decision

### I. *Implied Acquittal*

■ At Kocielko's first trial, the jury explicitly acquitted him of Count III and returned blank verdict forms as to the other two counts. Kocielko contends that because the State charged a "single episode that occurred over a relatively short period of time," Appellant's Brief at 13, an acquittal on Count III operated as an acquittal on the first two counts.

■ "[T]his Court has consistently refused to rule that jeopardy for an offense continues after an acquittal, whether that acquittal is express or implied by a conviction on a lesser included offense when the jury was given a full opportunity to return a verdict on the greater charge." *Price v. Georgia*, 398 U.S. 323, 329, 90 S.Ct. 1757, 26 L.Ed.2d 300 (1970). An "implied acquittal" by the jury is an "acquittal in which a jury convicts the defendant of a lesser-included offense without commenting on the greater-offense." *Moore v. State*, 882 N.E.2d 788, 798 n. 8 (Ind.Ct. App.2008). In *Haddix v. State*, 827 N.E.2d 1160 (Ind.Ct.App.2005), *trans. denied*, we observed that the doctrine of "implied acquittal" was essentially codified by Indiana Code Section 35–41–4–3(a), which states in relevant part:

> A prosecution is barred if there was a former prosecution of the defendant based on the same facts and for commission of the same offense and if:
>
> (1) The former prosecution resulted in an acquittal or a conviction of the defendant (A conviction of an included offense constitutes an acquittal of the greater offense, even if the conviction is subsequently set aside); or
>
> (2) The former prosecution was terminated after the jury was impaneled

and sworn ... unless ... the jury was unable to agree on a verdict[.]

Kocielko's first trial did not result in "acquittal implied by conviction on a lesser-included offense." *Price*, 398 U.S. at 329, 90 S.Ct. 1757. Indeed, no conviction was entered at the first trial; Kocielko was acquitted of one charge and the jury was hung as to two charges. A deadlocked jury does not result in acquittal barring retrial under the federal Double Jeopardy Clause. *Tibbs v. Florida*, 457 U.S. 31, 42, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982). *See also Menifee v. State*, 512 N.E.2d 142, 143 (Ind.1987) (observing, "a new trial is not barred following a hung jury").

Kocielko acknowledges the general rule that there is continuing jeopardy when the jury is discharged because it is unable to agree, but nonetheless asserts that his second trial was based upon the same facts as the first trial and the State may not avoid Double Jeopardy constraints by "dividing a single crime into a series of temporal or spatial units." Appellant's Brief at 9. He develops a two-fold argument: first, all of his alleged conduct with A.Q. could be no more than a single criminal offense; second, an acquittal as to some act subsumed within the single offense operates as an implied acquittal as to the whole.

■ Under the federal constitution, two or more offenses are not the same offense if each statutory offense requires proof of an additional fact which the other does not. *Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 76 L.Ed. 306 (1932). The State alleged that Kocielko committed Sexual Misconduct with a Minor by means of anal intercourse, in violation of Indiana Code Section 35–42–4–9(a)(1), which provides that it is a Class B felony for a person at least twenty-one years old to commit deviate sexual conduct upon a person fourteen years of age but less than

sixteen. Indiana Code Section 35–41–1–9 defines "deviate sexual conduct" to include "the penetration of the sex organ or anus of a person by an object."

Additionally, the State alleged that Kocielko committed Sexual Misconduct with a Minor by causing fondling of his penis with intent to satisfy sexual desires, in violation of Indiana Code Section 35–42–4–9(b)(1), which provides that it is a Class C felony for a person at least twenty-one years old to perform or submit to fondling or touching of the child or older person, with intent to arouse or to satisfy sexual desires. Finally, the State alleged that Kocielko committed Sexual Misconduct with a Minor by touching A.Q.'s breast with intent to satisfy sexual desires, in violation of Indiana Code Section 35–42–4–9(b)(1). Looking to the statutory elements of the charged offenses, each requires proof of an additional fact which the other does not. Acquittal on Sexual Misconduct with a Minor by fondling of A.Q.'s breast does not amount to an acquittal on the other charges according to federal double jeopardy principles.

■ Article I, Section 14 of the Indiana Constitution provides that "[n]o person shall be put in jeopardy twice for the same offense." *Richardson v. State*, 717 N.E.2d 32 (Ind.1999) explained that two offenses are the same offense if the statutory elements of the crimes are the same or the actual evidence used to convict is the same. The statutory elements analysis is the *Blockburger* test, already applied herein. *Goldsberry v. State*, 821 N.E.2d 447, 459 (Ind.Ct.App.2005). The actual evidence test addresses evidence presented at trial to determine whether separate and distinct facts were presented as to each offense. *Id.* There must be more than a remote or speculative possibility that the same facts were used. *Id.* Here, the jury at Kocielko's first trial heard discrete testimony as

to each alleged act. Kocielko has not shown a reasonable probability that the jury relied upon evidence of touching of A.Q.'s breast to also evaluate whether Kocielko compelled A.Q. to touch his penis or to engage in anal intercourse.

Kocielko rests his argument that there was only one offense upon *Bowling v. State*, 560 N.E.2d 658 (Ind.1990), a case in which the appellant had been charged, convicted, and sentenced for both deviate sexual conduct and the touching, fondling, and caressing of the minor child. Bowling claimed that the conduct did not represent two separate occasions but took place simultaneously on one occasion. *See id.* at 660. Our Supreme Court affirmed Bowling's Class B felony conviction but set aside his Class C felony conviction, because "the imposition of two sentences for the same injurious consequences sustained by the same victim during a single confrontation violated both Federal and State double jeopardy prohibitions." *Id.*

Kocielko also directs our attention to the subsequent case of *Watkins v. State*, 575 N.E.2d 624 (Ind.1991). Watkins had been convicted of Count I, for fondling and touching J.W. with intent to arouse and satisfy his sexual desires, and Count II, for attempting to commit child molesting by lying on top of a nude J.W. and placing his penis around and against J.W.'s anal area. *See id.* at 624. Our Indiana Supreme Court determined that multiple convictions could not stand for acts "committed within moments of each other as part of one incident." *Id.* at 625.

These cases disallow multiple sentences for a single confrontation with the same injurious consequences to a sole victim in a short time span. However, they do not stand for the proposition that Kocielko asserts: that allegations of sexual conduct with a single victim in a single encounter necessarily involve only "included" of-

fenses for double jeopardy purposes such that acquittal on any count precludes retrial on all others. The appellants in *Bowling* and *Watkins* had been convicted of all charges against them; their appeals did not follow instances of a hung jury or present issues of implied acquittal. The respective juries had determined that each "single confrontation" was comprised of all factual events alleged by the State.

Here, the State alleged a confrontation comprised of three factual scenarios, each of which the State sought to establish by independent facts: that Kocielko had committed deviate sexual conduct against A.Q. by anal intercourse, had (with intent to satisfy sexual desires) submitted to A.Q.'s fondling of his penis, and had (with intent to satisfy sexual desires) fondled A.Q.'s breast. The first jury's verdict on Count III indicated its conclusion that the State had not established beyond a reasonable doubt that Kocielko touched A.Q.'s breast with intent to satisfy sexual desires. As for the remaining counts, the jury submitted blank verdict forms, indicating an inability to reach verdicts. This presents the circumstance of a "hung jury" and is not analogous to the multiple convictions and sentences found to violate double jeopardy principles in *Bowling* and *Watkins*. The State was not prohibited from retrying Kocielko.

### II. Multiple Sentences

■■■ We next consider the issue of contemporaneous sentencing, that is, whether Kocielko may receive separate sentences for deviate sexual conduct and fondling when the acts took place in one confrontation involving one victim. As previously discussed, our Indiana Supreme Court has found sentencing error in violation of both Federal and State double jeopardy prohibitions, where there had been an "imposition of two sentences for the same injurious consequences sustained by the same victim during a single confrontation." *Bowling*, 560 N.E.2d at 659. Kocielko's contention that he may not be sentenced for two separate offenses is correct, and we remand with instructions to the trial court to set aside the Class C felony conviction.[3]

### III. Security Measures

Kocielko repeatedly objected to security measures employed at his trial, and also moved for a mistrial, asserting that the jury was given the impression that he was a dangerous individual in need of restraint. He now claims that he was denied his right to a fair trial because some of the jurors may have heard a hidden leg restraint snap, one juror admittedly saw Kocielko in visible restraints as he was being led to the bathroom, and finally, after the hidden leg restraint was removed, an officer was assigned to sit near Kocielko in the courtroom.

■■■ Generally, a defendant may not be presented to the jury in handcuffs or shackles. *Warr v. State*, 877 N.E.2d 817, 821 (Ind.Ct.App.2007), *trans. denied*. This is so because visible shackling "'undermines the presumption of innocence and the related fairness of the fact-finding process.'" *Stephenson v. State*, 864 N.E.2d 1022, 1029 (Ind.2007) (quoting *Deck v. Missouri*, 544 U.S. 622, 630, 125 S.Ct. 2007, 161 L.Ed.2d 953 (2005)). A defendant has the right to appear in front of a jury without physical restraints, unless such restraints are necessary to prevent the defendant's escape, to protect those

---

**3.** This obviates the need to correct sentencing error when the trial court enhanced each of Kocielko's sentences by thirty years due to his habitual offender adjudication. A habitual offender sentence enhancement may be placed on one underlying felony conviction but not both. *See Davis v. State*, 843 N.E.2d 65, 67 (Ind.Ct.App.2006).

present in the courtroom, or to maintain order during trial. *Evans v. State,* 571 N.E.2d 1231, 1238 (Ind.1991). "The facts and reasoning supporting the trial judge's determination that restraints are necessary must be placed on the record." *Wrinkles v. State,* 749 N.E.2d 1179, 1193 (Ind.2001), *cert. denied,* 535 U.S. 1019, 122 S.Ct. 1610, 152 L.Ed.2d 624 (2002). Unless the defendant demonstrates actual harm, it is not an abuse of discretion for a trial court to deny a motion for mistrial because a juror has seen a defendant in handcuffs. *Warr,* 877 N.E.2d at 821.[4]

During voir dire, Kocielko objected that a hidden leg brace he was required to wear in the courtroom made "snapping" noises audible to the jury. (Tr. 1044.) His objection to the leg restraint resulted in the following discussion and order from the trial court to court personnel:

> The record will reflect that all the prospective jurors are outside of the courtroom. Mr. Kocielko, I noticed you walk back to the table, and the brace appeared to me to function properly until you straightened your leg out all the way and that's when it snaps. But in an abundance of caution take the brace off him, sit in front of the bar, officer. It's not locking up now. It does when you do what I said you do. You're walking. Take the brace off him. Sit in front of the bar. We'll do it that way.

(Tr. 1045–46.) Kocielko then objected to having the officer sit behind him, arguing that such created an impression of dangerousness. The trial court overruled the objection but offered to admonish the jury regarding any clicking of the leg restraint. With Kocielko's acquiescence, the trial court admonished the jury as follows:

> Ladies and gentlemen, you may have heard one or more clicks created by a leg brace or by the defendant. The jury impaneled to sit in this cause is admonished to disregard the fact that the defendant was wearing a leg brace in arriving at its verdict. Is there anyone in the courtroom who thinks they cannot follow that admonition? There are no hands being raised. I will take that as a no.

(Tr. 1053.) Jurors are presumed to follow a trial court's admonishment. *See Francis v. State,* 758 N.E.2d 528, 532 (Ind.2001). Further, here the trial court obtained affirmation from the jury that the specific admonition could be followed. As for the occasion where a jury member saw Kocielko restrained while he was being led to the bathroom, "even if the jurors had seen [him] in handcuffs ... reasonable jurors can expect defendants to be in police custody while in the hallway of a courthouse." *Warr,* 877 N.E.2d at 822.

Kocielko failed to demonstrate actual harm from the "snapping" or observation incidents. Finally, he cites no authority for the proposition that the trial court's assignment of an officer to sit in front of the bar was an improper or prejudicial security measure. We find no abuse of discretion in the trial court's implementation of security measures or in its decision to deny a mistrial.

### IV. Self–Representation

Kocielko asked to represent himself, and the trial court permitted it. Kocielko now contends that the trial court failed to adequately warn him of the difficulties of self-representation, and thus his decision to

---

4. The grant of a motion for mistrial is an extreme remedy that is warranted only when less severe remedies will not satisfactorily correct the error. *Warren v. State,* 725 N.E.2d 828, 833 (Ind.2000).

represent himself was not knowing and intelligent.

The Sixth Amendment does not compel a defendant to accept a lawyer when the defendant insists upon conducting his own defense. *Kubsch v. State,* 866 N.E.2d 726, 735 (Ind.2007), *cert. denied,* 553 U.S. 1067, 128 S.Ct. 2501, 171 L.Ed.2d 791 (2008). However, advice as to the dangers of self-representation at trial is required before a defendant may make a knowing and intelligent decision to proceed pro se. *Faretta v. California,* 422 U.S. 806, 835, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). There are no "magic words" that a judge must utter to ensure that a defendant adequately appreciates the nature of the situation; rather, whether the waiver was "knowing and intelligent" depends upon the particular facts and circumstances surrounding the case, including the background, experience, and conduct of the defendant. *Kubsch,* 866 N.E.2d at 736 (citing *Johnson v. Zerbst,* 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938)).

An appellate court reviewing the adequacy of a waiver considers four facts: (1) the extent of the trial court's inquiry into the defendant's decision, (2) other evidence in the record establishing whether the defendant understood the dangers and disadvantages of self-representation, (3) the background and experience of the defendant, and (4) the context of the decision to proceed pro se. *Id.*

At the conclusion of his first trial, Kocielko informed the trial court that he wished to proceed pro se and the trial court immediately advised Kocielko:

[I]f you elect to represent yourself, number one, I don't think that's a good idea. I believe that a person who is charged with a serious criminal offense should be represented by counsel. If I were charged with a crime of any magnitude,

I would hire a lawyer, and I was a deputy prosecutor for 20 years, I was a public defender for two years and I have been a judge of this court for 11 years. I know a lot about the criminal law. I'd still hire a lawyer to represent me. I would never attempt to represent myself. If you can't afford a lawyer, I will be hap—and you want counsel appointed to represent you, I'll be happy to conduct an indigency hearing and if I determine that you are indigent, I will appoint a lawyer to represent you. If you persist in your desire to represent yourself, I have no reason to believe that you're incapable of doing so and I will permit it assuming that I agree with—that you are capable of doing so. But, you will be held to the same standards that a lawyer must—the same standards of those which apply to a lawyer. So, you're going to have to abide by the court rules. You're going to have to follow those rules when you file pleadings and you're going to have to serve opposing counsel with those pleadings. Do you understand what I'm saying?

(Tr. 639–40.) Kocielko responded, "I do." (Tr. 640.) He then advised the trial court that he would confer with his family before reaching a firm decision on self-representation.

At a subsequent pre-trial hearing, Kocielko advised the trial court of his decision to proceed pro se, and the trial court responded:

I'll give you the same admonition that I gave to [another defendant]. I believe you are making a serious mistake. If you proceed pro se, I will hold you to the same standards that I would hold a practicing lawyer. You are not trained as a lawyer. I cannot be your lawyer. I cannot give you legal advice. I won't give you legal advice. If you make a mistake, I won't tell you how to fix it. If

you want to accomplish something and don't know how to achieve it, I won't tell you. If I were to do those things, I would be acting as your lawyer. That is an impermissible role for the trial judge. ... If I were in your position, charged with a Class B felony, I would hire a lawyer to represent me, because I know that there is a lot of truth in the old saying that a person who represents himself has a fool for a client. I strongly advise against it.

(Tr. 645.) The trial court then reminded Kocielko of a former case in which he had represented himself and was found to be "incompetent." (Tr. 645.) Kocielko reiterated his desire to proceed pro se.

Kocielko concedes that the trial court repeatedly warned him against self-representation. He points to a single omission he deems critical: "impressing upon [him] the difficulties in self-representation when dealing with complex evidentiary issues such as those involved in challenging DNA." Appellant's Brief at 20. The record does not support Kocielko's claim of lack of awareness. DNA evidence was presented by the State at Kocielko's first trial. There is no articulated reason to believe that he failed to anticipate that DNA evidence would be presented at his second trial.

The trial court repeatedly warned Kocielko of the dangers of self-representation. Kocielko indicated that he understood. Moreover, Kocielko was not unacquainted with criminal proceedings. As for the context in which Kocielko decided to represent himself, it was after the conclusion of his first trial and also after a period of time to reflect and to consult with his family. This indicates that he was aware of the State's evidence and also that he had time to carefully consider his decision. Given the facts and circumstances surrounding Kocielko's decision to proceed pro se, the trial court appropriately determined that Kocielko's waiver of counsel was knowing and intelligent.

## V. Request for DNA Expert

Kocielko argues that he was entitled to the appointment of a DNA expert at public expense. Decisions regarding experts for indigent defendants are committed to the trial court's sound discretion, and such decisions will not be overturned absent an abuse of that discretion. *Scott v. State*, 593 N.E.2d 198, 200 (Ind. 1992). The trial court is not required to appoint any expert that the defendant believes may be helpful, and the defendant bears the burden of demonstrating the need for the appointment, specifying precisely how he or she would benefit from the requested services. *Id.*

While there is no exhaustive and precise list of considerations, the trial court's central inquiry addresses whether the services are necessary to assure an adequate defense and whether the defendant specifies precisely how he would benefit from the requested expert services. *Id.* Factors include: (1) whether the services would bear on an issue generally regarded to be within the common experience of the average person, or on one for which an expert opinion would be necessary; (2) whether the requested expert services could nonetheless be performed by counsel; (3) whether the proposed expert could demonstrate that which the defendant desires from the expert; (4) whether the purpose for the expert appears to be only exploratory; (5) whether the expert services will go toward answering a substantial question in the case or simply an ancillary one; (6) the seriousness of the charge; (7) whether the State is relying upon an expert and expending substantial resources on the case; (8) whether a defendant with monetary resources would choose to hire such an ex-

pert; (9) the costs of the expert services; (10) the timeliness of the request for the expert and whether it was made in good faith; and (11) whether there is cumulative evidence of the defendant's guilt. *Id.* at 200–01. Even where there are factors present militating toward appointment of an expert, such as the services would have borne upon an issue outside the common experience of the average person, and analysis is outside the scope of the typical attorney's services, the factors may be insufficient to *require* the trial court to approve the hiring of an expert at public expense. *Jackson v. State,* 758 N.E.2d 1030, 1033 (Ind.Ct.App.2001) (emphasis in original.)

■ Here, Kocielko advised the trial court that he desired a DNA expert because "there's questions of reliability and validity involved in the testing of this evidence" and "the State of Indiana has three forensic scientists that will be testifying at the trial against me." (Tr. 851.) Upon inquiry by the trial court, Kocielko was unable to advise as to who he intended to hire as an expert or what the cost would be. The trial court denied the motion as follows:

> How can I authorize payment of funds to a person that I don't know, a person whom I do not know is qualified to give the public its money's worth in providing information to you, and who will charge a fee that you do not know and I do not know? Your motion is denied for those reasons.

(Tr. 853.) At a later hearing, Kocielko advised the trial court, "I contacted AIT Laboratories and here I'm still waiting a response to see what exact price of the retesting—I mean the hiring of a DNA consultant would cost." (Tr. 971.) Approximately one month later, Kocielko moved to exclude the State's DNA evidence and the trial court admonished Ko-

cielko that he had failed to provide the trial court with the identity and cost of the expert he presumably wished to hire.

The State offered DNA evidence, a subject matter of some complexity, outside common experience or the typical attorney's services. Kocielko faced serious charges and might well have hired an expert on his own, if he had available funds. On the other hand, the DNA evidence was in addition to A.Q.'s testimony that Kocielko sodomized her and left ejaculatory fluid on her underwear. Moreover, Kocielko failed to provide specifics as to identity, cost, and the precise benefit to be gained. We find no abuse of discretion in the trial court's decision not to provide Kocielko with a DNA expert at public expense.

### VI. Sentence

■ Upon conviction of a Class B felony, Kocielko faced a sentencing range of between six and twenty years, with the advisory sentence being ten years. *See* Ind.Code § 35–50–2–5. Kocielko received the maximum sentence of twenty years, which he now claims is inappropriate.

■ Under Indiana Appellate Rule 7(B), this "Court may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." Ind. Appellate Rule 7(B). In performing our review, we assess "the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other factors that come to light in a given case." *Cardwell v. State,* 895 N.E.2d 1219, 1224 (Ind.2008). A defendant " 'must persuade the appellate court that his or her sentence has met th[e] inappropriateness standard of review.' " *Anglemyer v. State,* 868 N.E.2d 482, 494 (Ind.2007) (quoting *Chil-*

*dress v. State,* 848 N.E.2d 1073, 1080 (Ind. 2006)).

■■■ As to the nature of the offense, the advisory sentence "is the starting point the Legislature has selected as an appropriate sentence for the crime committed." *Childress,* 848 N.E.2d at 1081. The nature of the instant offense is that Kocielko exploited his position as A.Q.'s step-father to get A.Q. alone and victimize her. Kocielko had been a father figure to A.Q. since age five. During a separation from A.Q.'s mother, Kocielko asked for overnight visitation with A.Q. and then took her to a motel alone and rented a room with only one bed. Kocielko provided whiskey to A.Q. until she was drunk; he then sodomized her. After several days of pain, A.Q. was required to seek medical treatment for an anal fissure. Kocielko extracted A.Q.'s promise to remain quiet about the sexual activity, promising that he would not tell her mother about her smoking and drinking alcohol.

As to the character of the offender, Kocielko has failed to benefit from prior rehabilitative efforts. He was convicted of burglary in 1989, receiving stolen property in 1989, carrying a handgun without a license and possession of marijuana in 2000, theft in 2005, and burglary in 2005. He has violated probation on numerous occasions, and was on probation at the time of the instant offense. Once incarcerated, he possessed a hidden weapon and uttered threats to kill A.Q. and her mother.

In light of Kocielko's character and the nature of his offense, we do not find his sentence to be inappropriate.

### Conclusion

Kocielko was properly retried after the first jury hung as to two counts against him. However, because Kocielko committed acts against a single victim in one confrontation, double jeopardy prohibitions prevent his being convicted and sentenced upon the Class C felony charge. We remand with instructions to set aside the Class C felony conviction and sentence.

Kocielko has demonstrated no reversible error in the trial court's employment of security measures, decision to permit Kocielko to proceed pro se, or declining to provide Kocielko with a DNA expert at public expense. Finally, Kocielko's maximum sentence is not inappropriate.

Affirmed in part; reversed in part; and remanded.

RILEY, J., and KIRSCH, J., concur.