**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**

ATTORNEY FOR APPELLANT:

**DALE W. ARNETT**
Winchester, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**JAMES B. MARTIN**
Deputy Attorney General
Indianapolis, Indiana



FILED

Feb 26 2013, 9:26 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| STANLEY SHORT, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 69A01-1206-CR-268 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE RIPLEY CIRCUIT COURT
The Honorable Carl H. Taul, Judge
Cause No. 69C01-1105-FA-4

**February 26, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**NAJAM, Judge**

## STATEMENT OF THE CASE

Stanley Short appeals his sentence following his convictions for rape, as a Class A felony; criminal deviate conduct, as a Class A felony; criminal confinement, as a Class B felony; battery, as a Class C felony; and battery, as a Class A misdemeanor. Short presents two issues for our review, which we restate as:

1. Whether his convictions for rape and criminal deviate conduct violate double jeopardy principles.

2. Whether the trial court abused its discretion when it imposed consecutive sentences.

We affirm.

## FACTS AND PROCEDURAL HISTORY

Short and L.C. married in 2010, but a short time later, L.C. filed for divorce. On May 25, 2011, L.C. came home from taking her children to school and found Short inside her house. Short was holding a hammer and said to L.C., "You're gonna be with me. I'm gonna have you one last time." Transcript at 64. L.C. told Short to leave, and then she started to dial 911 on her cell phone. Short refused to leave and grabbed her cell phone from her. L.C. tried to leave the house, but Short had locked the door. L.C. started screaming, and Short hit her in the side of the head with the hammer. Short then held the hammer up and said, "If you don't have sex with me one last time, I'm gonna really hurt you." Id. at 66. L.C. then put her hands up and said, "I'll do what you want. Don't hit me again[.]" Id.

Short proceeded to place L.C. in handcuffs and forced her upstairs into a bedroom. Short told L.C. to take her pants off, which she did. But when she could not get her shirt

off, he cut it off with a box cutter. Short then handcuffed L.C. to the bed and raped her. At some point, he stopped and told L.C. that she was going to perform oral sex on him. Short then put his penis in front of L.C.'s mouth, but she told him that she could not do it. L.C. told Short that she felt like she was going to vomit. L.C. begged Short to get something to stop the bleeding on her head, which he did. Short then started looking through pictures of L.C. on her cell phone, and he accused her of having sex with someone else, which she denied. Short then performed oral sex on L.C. while she was still handcuffed to the bed.

After approximately one and a half hours, L.C. told Short that her mother was supposed to come over to her house that day and the two of them were going to run errands together. L.C. asked him whether she could call her mother to cancel their plans, and he agreed. Short dialed the phone for L.C. Her father answered, and she told him to tell her mother "not to come over. Something's come up." Id. at 77. L.C. was not able to convey anything to her father to indicate that she was in trouble. After the phone call, Short was concerned that L.C.'s mother might still come by the house looking for L.C. Short then used duct tape, handcuffs, and zip ties to secure L.C. to the bed, and he went outside to move her car out of sight.

When Short came back after moving the car, L.C. told Short that she loved him and that they could be together if he would let her go. She asked him whether she could get cleaned up, and he untied her. Short was holding a hammer and watching L.C. while she took a bath. L.C. begged Short to put the hammer down, but he refused. L.C. then told Short that she had to go pay her electric bill that day or else her electricity was going

3

to be shut off for nonpayment. Short did not believe L.C., but he listened while she called the electric company and confirmed that she had to pay the bill that day. L.C. told Short that she would not try to run away if he went with her to pay the bill, and he finally agreed.

L.C. drove while Short sat in the front passenger seat of her car. First, L.C. withdrew money from the drive-through window at the bank near her house. Then L.C. started crying and told Short that she needed to get some makeup from a nearby store. L.C. convinced him that she needed to look nice or else someone would "notice something's wrong." Id. at 89. Inside the store, L.C. tried to think of a way to get help without Short hurting her or someone else, but she did not come up with a plan. They bought some makeup and left the store. Then, as L.C. was driving, with Short in the passenger seat, L.C. saw a "great, big, huge" man and two other men standing near a hot dog stand. Id. at 91. So L.C. pulled the car up next to the men, jumped out of the car, and ran "right behind the biggest one." Id. L.C. then began screaming, "He just raped me," and she showed the men the blood on her head. Id. She pleaded for help and asked them to call the police. Short fled the scene, and it was several days before police found him, at L.C.'s residence, and arrested him.

The State charged Short with rape, as a Class A felony; criminal deviate conduct, as a Class A felony; criminal confinement, as a Class B felony; battery, as a Class C felony; and domestic battery, as a Class A misdemeanor. A jury found him guilty as charged. The trial court entered judgment of conviction accordingly and sentenced Short as follows: thirty years for rape (Count One); thirty years for criminal deviate conduct

4

(Count Two); fifteen years for criminal confinement (Count Three); six years for battery (Count Four); and one year for domestic battery (Count Five). The trial court ordered that the sentences on Counts One and Two would run consecutively, and the sentences on Counts Three through Five would run concurrent with each other and consecutive to the sentences on Counts One and Two, for an aggregate term of seventy-five years. This appeal ensued.

## DISCUSSION AND DECISION

### Issue One: Double Jeopardy

Short first contends that because both the rape and criminal deviate conduct convictions were elevated to Class A felonies based on the same imminent threat of force, namely, Short's wielding a hammer, they violate double jeopardy principles. In support of his contention on this issue, Short cites to Pierce v. State, 761 N.E.2d 826 (Ind. 2002). But in Pierce, the defendant's burglary and robbery convictions were both elevated to higher classes of felonies based on the same bodily injury to the victim, not a threat of force.

As we explained in Brown v. State, 633 N.E.2d 322, 324 (Ind. Ct. App. 1994), "[w]e have refused to extend [case law prohibiting the use of the same bodily injury to elevate two convictions] to cases elevating offenses committed while armed." The circumstances are distinguishable "because the threat of harm, which cause[s] the elevation of the felonies, [i]s distinct during the commission of separate offenses[.]" Id. Whereas in the other cases, such as Pierce, "the elevation of offenses was based upon one instance of bodily injury." See id. We hold that Short's convictions for rape and

5

criminal deviate conduct, both as Class A felonies, do not violate double jeopardy principles.

## Issue Two: Consecutive Sentences

Short next contends that the trial court abused its discretion when it imposed consecutive sentences. In particular, Short maintains that his offenses constitute a "single episode encounter" and, as such, the trial court was prohibited from imposing consecutive sentences. Brief of Appellant at 12. We cannot agree.

Sentencing decisions rest within the sound discretion of the trial court and are reviewed on appeal only for an abuse of discretion. Anglemyer v. State, 868 N.E.2d 482, 490 (Ind. 2007), clarified on other grounds on reh'g, 875 N.E.2d 218 (Ind. 2007). An abuse of discretion occurs if the decision is clearly against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn therefrom. Id.

In support of his contention on this issue, Short cites to Kocielko v. State, 938 N.E.2d 243, 251 (Ind. Ct. App. 2010), where another panel of this court held that the defendant could not receive separate sentences for two acts of sexual misconduct "when the acts took place in one confrontation involving one victim." But, in Vermillion v. State, 978 N.E.2d 459, 465-66 (Ind. Ct. App. 2012), yet another panel of this court "provide[d] context for Kocielko" in rejecting the same argument Short makes here, and we adopt that panel's reasoning. As the Vermillion court explained:

> Before Richardson supplied the current double-jeopardy standard, our Supreme Court held in a series of cases that "the imposition of two sentences for the same injurious consequences sustained by the same victim during a single confrontation" violated both the federal and state double-

jeopardy prohibitions. Bowling v. State, 560 N.E.2d 658, 660 (Ind. 1990); see also Watkins v. State, 575 N.E.2d 624, 625 (Ind. 1991); Ellis v. State, 528 N.E.2d 60, 61 (Ind. 1988); Bevill v. State, 472 N.E.2d 1247, 1254 (Ind. 1985). When Richardson was decided in 1999, it abrogated a number of cases that articulated the "single incident" reasoning found in Bowling. However, Richardson made no mention of Bowling.

Richardson's effect on Bowling was not examined until 2010, in Kocielko.[] In Kocielko, the defendant got into bed with his teenage stepdaughter, placed her hand on his penis, and moved it in circles. He also pulled down her shorts and penetrated her anus with his penis. Kocielko, 938 N.E.2d at 248. Kocielko was convicted of two counts of sexual misconduct with a minor, one count as a Class B felony, and one count as a Class C felony. He was also adjudicated a habitual offender. On appeal, another panel of this Court, the Kocielko Court, reversed the ruling of the trial court, concluding that under Bowling, Kocielko could not receive separate sentences for the two acts of sexual misconduct "when the acts took place in one confrontation involving one victim." Id. at 251. The Kocielko Court remanded with instructions that the trial court set aside Kocielko's Class C felony conviction. Id.

Kocielko was revisited in early 2011 on rehearing. There, the State argued that Richardson, which provided, among other things, the statutory-elements and actual-evidence tests, had overruled Bowling's "single incident" analysis. The Kocielko Court disagreed, explaining that Bowling had not been expressly overruled and therefore continued to stand for the proposition that "a sentence must reflect the episodic nature of the crimes committed." Kocielko, 943 N.E.2d at 1282. However, the Court reinstated Kocielko's Class C felony conviction it had earlier vacated and affirmed the trial court's order that the sentences run concurrently. Our Supreme Court denied transfer in Kocielko in May 2011.

Kocielko is not easily applied here. Consecutive sentencing was never at issue. Double jeopardy was. To the extent that Kocielko may be read to suggest that our trial courts may not impose consecutive sentences for crimes that arise out of a single confrontation involving a single victim, we cannot agree. A trial court may impose consecutive sentences for separate and distinct crimes that arise out of a single confrontation involving the same victim—subject to Richardson's, double-jeopardy protections, other sentencing mandates, and our abuse-of-discretion review.

(Emphasis added, footnote omitted).

7

Here, over the course of a few hours, Short hit L.C. on the head with a hammer, raped her twice vaginally, attempted to get her to perform oral sex on him, and performed oral sex on her. As we discussed in Issue One, there is no double jeopardy violation here. And Indiana Code Section 35-50-1-2 expressly authorizes the imposition of consecutive sentences where, as here, a defendant is convicted of crimes of violence. See, e.g., Sallee v. State, 777 N.E.2d 1204, 1216 (Ind. Ct. App. 2002) (affirming consecutive sentences and aggregate 103 year sentence on convictions for rape, criminal deviate conduct, and criminal confinement where offenses transpired over approximate four-hour period of time), trans. denied. We hold that the trial court did not abuse its discretion when it imposed consecutive sentences in sentencing Short.

Affirmed.

FRIEDLANDER, J., and BRADFORD, J., concur.