Rageing WARR, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 49A05–0701–CR–20.

Court of Appeals of Indiana.

Dec. 10, 2007.

Transfer Denied Jan. 24, 2008.

Katherine A. Cornelius, Marion County
Public Defender Agency, Appellate Divi-

sion, Indianapolis, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Scott L. Barnhart, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

MATHIAS, Judge.

Rageing Warr ("Warr") was convicted in Marion Superior Court of Class D felony battery by body waste and Class B misdemeanor disorderly conduct. The trial court also found Warr to be in direct contempt of court. Warr appeals and presents five issues, which we restate as:

I. Whether Warr was denied a fair trial because some jurors may have seen her in handcuffs;

II. Whether the trial court erred in excluding certain evidence;

III. Whether Warr was denied the effective assistance of counsel;

IV. Whether the evidence is sufficient to support her convictions and the contempt findings; and

V. Whether the sentences imposed by the trial court were inappropriate.

We affirm.

### Facts and Procedural History

On the morning of April 12, 2005, Warr and her teenaged daughter got into an argument about the daughter brushing her teeth before going to school. The daughter wanted to brush her teeth, but Warr thought that she had had plenty of time to do so. Warr's younger son telephoned the police, and Officer Connie Mahshie ("Officer Mahshie") of the Indianapolis Police Department was dispatched to Warr's house. Upon arrival, Officer Mahshie saw Warr lying on the floor with her daughter sitting on top of her. The daughter explained that Warr had come after her with a broom, so she restrained her mother until the police arrived. Officer Mahshie separated the two, but they continued to yell at each other.

Officer Greg Park ("Officer Park") then arrived and asked Warr what she wanted her daughter to do. Warr explained that she just wanted her daughter out of the house and at school. In an attempt to separate the two, Officer Park told Warr's daughter to go to the bathroom and brush her teeth so that she could go to school. This incensed Warr, who began to scream at the police that they could not tell her daughter what to do.

Still trying to defuse the situation, Officer Mahshie took Warr to the front porch. Officer Mahshie asked Warr to sit in a chair and to remain quiet. Instead, Warr started yelling, got out of the chair, and ran in the house towards the bathroom, where her daughter was. Both officers stopped Warr and attempted to place her in handcuffs. While being handcuffed, Warr jerked away from the officers, flailed her arms, and screamed profanities. After Warr was placed in handcuffs, Officer Park took her back outside to the front porch as she continued to yell and curse in a very loud voice. When Warr asked why she was being arrested, he explained that she was being charged with disorderly conduct. Warr replied, "Disorderly conduct?" Tr. p. 174. She then spat in Officer Park's face, and said, "F——k you! Now you've got a charge." Tr. p. 175. Warr was yelling so loudly that neighbors were coming out of their houses to see what was going on, and there were school children waiting at a nearby bus stop within earshot.

On April 12, 2005, the State charged Warr with Class A misdemeanor battery, Class D felony battery by body waste, Class A misdemeanor resisting law en-

forcement, and Class B misdemeanor disorderly conduct. Warr was initially represented by a public defender, but the public defender withdrew his appearance on Warr's request. The trial court allowed Warr to proceed pro se but appointed standby counsel.

On November 29, 2006, the day of Warr's jury trial, the State moved to dismiss the misdemeanor battery count, which motion was granted by the trial court. Before the trial court judge, but never in the presence of the jury, Warr repeatedly used profane language despite being warned not to do so by the court. The jury ultimately found Warr guilty of battery by body waste and disorderly conduct but not guilty of resisting law enforcement. The trial court found Warr in direct contempt of court for her continued use of foul language and immediately sentenced her to 180 days incarceration for contempt.

At a sentencing hearing held on December 12, 2006, the trial court found aggravating circumstances, but no mitigating circumstances, and sentenced Warr to two years upon the conviction for battery by body waste. The trial court ordered Warr to execute sixty days incarcerated, ordered 120 days on home detention, and suspended the remainder to probation. With regard to the disorderly conduct conviction, the trial court sentenced Warr to 180 days, with sixty days incarcerated and 120 days on home detention. Both sentences were ordered to run concurrently but consecutive to the previously-imposed sentence for contempt. Warr now appeals.

## I. Handcuffs

 Warr claims that she was denied her right to a fair trial because some of the jurors may have seen her in restraints. Generally, a defendant may not be presented to the jury in handcuffs or shackles, but a court may need to do so in certain exceptional circumstances. *Davis v. State,* 770 N.E.2d 319, 325 (Ind.2002). Furthermore, unless the defendant demonstrates actual harm, it is not an abuse of discretion for a trial court to deny a motion for mistrial because a juror has seen a defendant in handcuffs. *Id.*

During Warr's trial, the State brought it to the attention of the trial court that "one or two" of the jurors may have seen Warr in custody after the jury had been dismissed from the courtroom. Warr had been removed from the courtroom after the jury had been dismissed because the court deputy thought that "things started getting a little loud and out of control...." Tr. p. 75. Warr's standby counsel then asked the court to question the jurors in question with regard to what they saw.

The first juror questioned indicated that she had seen prisoners standing in line in the hallway, and had seen Warr go "across" the line of prisoners. Tr. p. 80. Warr asked the juror if she saw her doing anything unusual, to which the juror replied, "No, because when I saw you, I was getting ready to go back into the room. *And all I saw was your face, that was it.*" Tr. p. 81 (emphasis supplied). When the trial court asked if the jury had talked about what she had seen in the hallway, the juror replied, "I think a couple mentioned it." Tr. p. 81 When asked what was mentioned, the juror stated, "That they had seen some prisoners in the hallway." Tr. p. 82. The trial court then asked if anything had been said about the attorneys or Warr, and the juror replied, "No." Tr. p. 82.

The second juror who had seen the prisoners in the hallway was then questioned. This juror explained that she had seen "people handcuffed" in the hallway, and that she had seen Warr in a doorway. Tr. pp. 84–85. The juror also mentioned that another juror, presumably the first one

questioned, had seen Warr "in line with the rest," referring to those in handcuffs in the hallway. Tr. p. 85. The juror explained that the prisoners in the hallway were in "orange suits," and that Warr, who was later identified as wearing a black shirt with a sweater, was just in the hallway. Tr. p. 86. In fact, the juror stated that Warr "ha[d] as much right to be in the hallway as anybody else." Tr. p. 86. Both jurors who were questioned testified that what they had observed would not affect their ability to sit as jurors. Warr requested that one of the jurors be replaced, which the trial court denied.

We first note that Warr did not move for a mistrial, which would have been a more proper course of action. *See Davis,* 770 N.E.2d at 325 (defendant moved for a mistrial where jurors saw him in handcuffs). More importantly, it appears that neither of the jurors questioned indicated that they actually saw Warr in handcuffs or other restraints. At most, the jurors saw Warr in the hallway near some prisoners who were in orange jumpsuits and handcuffed. From this, Warr cannot demonstrate actual harm. Even if the jurors had seen her in handcuffs or thought that she was with the other prisoners in the hallway, reasonable jurors can expect defendants to be in police custody while in the hallway of a courthouse. *Id.* at 326. We can discern no reversible error with regard to the trial court's handling of this issue.

## II. Exclusion of Evidence

■ Warr next argues that the trial court erred in excluding certain evidence she sought to have admitted at trial. The admission or exclusion of evidence is within the discretion of the trial court, and we will reverse only where the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court. *Guillen v. State,* 829 N.E.2d 142, 145 (Ind.Ct.App.2005), *trans. denied.*

■ Warr first claims that the trial court erred in refusing to allow her to elicit testimony regarding the fact that the State apparently removed Warr's children from her care after she was arrested. Warr claims that this evidence was relevant to her theory of the case, which was that the State and police conspired to interfere with her parenting and take her children from her custody. The State notes that Warr failed to make any offer to prove what the evidence she was trying to elicit would have been.

■ In order to preserve the exclusion of evidence for appellate review, a defendant must make an offer to prove, setting forth the grounds for admission of the evidence and the relevance of the testimony. *See Guillen,* 829 N.E.2d at 145. Although Warr was acting pro se, she was still bound to follow the same procedural rules as trained legal counsel. *See Hill v. State,* 773 N.E.2d 336, 346 (Ind.Ct.App. 2002), *clarified upon reh'g,* 777 N.E.2d 795 (Ind.Ct.App.2002), *trans. denied.* Therefore, Warr has failed to preserve this issue for appellate review.[1] The same is true regarding Warr's claim that the trial court

---

1. Even if we were to consider this issue on the merits, we are unable to see how the removal of her children, which Warr admitted occurred months after her arrest, was relevant to the issues being tried, i.e. whether Warr engaged in disorderly conduct, resisted law enforcement, and spat upon Officer Park. Even under the broad definition of relevant evidence found in our evidentiary rules, the trial court was within its discretion to conclude that the evidence Warr sought to admit was either irrelevant or that its relevance was substantially outweighed by the danger of "unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence." Ind. Evidence Rule 403.

erred by limiting her questioning of Officer Park regarding any prior disciplinary problems he may have had; Warr failed to preserve any error in this regard by failing to make an offer to prove.[2] *See Guillen,* 829 N.E.2d at 145.

## III. Effectiveness of Standby Counsel

 Warr claims that her standby counsel was unprepared to assist her in the presentation of her case. The State argues that Warr cannot claim ineffective assistance of counsel because she waived her right to counsel by choosing to proceed pro se. To be sure, a defendant who chooses to proceed pro se must accept the burdens and hazards of self-representation and may not assert a Sixth Amendment claim of ineffective assistance of counsel. *Carter v. State,* 512 N.E.2d 158, 162 (Ind. 1987) (citing *Faretta v. California,* 422 U.S. 806, 835 n. 46, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975)). Whether a defendant may claim ineffective assistance from standby counsel depends on whether hybrid representation is more akin to a defendant proceeding pro se or is more akin to a defense controlled by counsel. *Henson v. State,* 798 N.E.2d 540, 546 (Ind.Ct. App.2003) (citing *Carter,* 512 N.E.2d at 164), *trans. denied.*

 Here, Warr acted pro se throughout the vast majority of her trial: she performed voir dire of potential jurors, made her own opening statement, argued that a juror should be removed, made objections to evidence proffered by the State, cross-examined the State's witnesses, and made her closing statement. In contrast, Warr's standby counsel performed relatively few tasks, such as assisting Warr in the presentation of some exhibits during the testimony of the State's second witness, informing the trial court that Warr would not testify, and making challenges to certain proposed instructions. Based upon this, we conclude that Warr represented herself and her defense was not controlled by counsel because she herself maintained control of the defense throughout the trial.[3] As such, Warr cannot now claim ineffective assistance of counsel, because she would essentially be alleging herself ineffective.[4] *See Carter,* 512 N.E.2d at 163–64.

## IV. Sufficiency of the Evidence

 Warr challenges the sufficiency of the evidence supporting her conviction for battery by body waste and the trial court's contempt finding. Upon review of claims of insufficient evidence we neither reweigh the evidence nor assess the credibility of the witnesses. *Weida v. State,* 778 N.E.2d 843, 846 (Ind.Ct.App. 2002). We consider only the evidence most favorable to the verdict and reasonable inferences drawn therefrom, and we will affirm the conviction if there is probative evidence from which a reasonable jury could have found the defendant guilty beyond a reasonable doubt. *Id.*

2. Again, even if we were to consider this issue on the merits, we would not conclude that the trial court erred in limiting Warr's questioning regarding any prior misconduct or disciplinary problems on the part of Officer Park. Indiana Evidence Rule 404(b) generally prohibits the use of evidence of crimes, wrongs, or acts to prove the character of a person in order to show action in conformity therewith, and Indiana Evidence Rule 608(b) prohibits the use of specific instances of conduct in order to attack or support a witnesses' credibility.

3. Indiana has traditionally limited standby counsel to a strictly advisory role. *See Carter,* 512 N.E.2d at 163 n. 2.

4. We further note that Warr's standby counsel, when claiming that he was unprepared, blamed his unpreparedness in part upon Warr's refusal to discuss her case with him.

Warr's argument with regard to her conviction for battery by body waste is simply a request that we reweigh the testimony and believe her testimony rather than that of Officer Park. We will not do so. Officer Park testified that Warr spat upon his face, and Officer Mahshie testified that she saw spit on Officer Park's face. From this the jury could conclude that Warr knowingly placed a body fluid on a law enforcement officer in a rude, insolent, or angry manner while the officer was engaged in the performance of official duties. *See* Ind.Code § 35–42–2–6(c) (2004).

Warr also challenges the sufficiency of the evidence supporting the trial court's findings that she was in direct criminal contempt of court. The State, citing *Hunter v. State*, 802 N.E.2d 480, 485 n. 8 (Ind.Ct.App.2004), *trans. denied,* claims that Warr cannot now challenge the contempt findings because she did not separately file a notice of appeal from the contempt finding. In *Hunter,* the court noted that the defendant could not challenge the validity of his contempt sanctions in a separate and distinct criminal action. The defendant in *Hunter* had been found in contempt in 1996 and 2000 for failure to pay child support and then prosecuted for criminal failure to pay child support in 2001. *Id.* at 483. In addressing the defendant's claim that the prior contempt findings acted to bar subsequent prosecution for non-payment of child support, the *Hunter* court noted that it would not address the defendant's complaints regarding the earlier and previously-unchallenged contempt findings because such would be a collateral attack in a separate and distinct action. *Id.* at 485 n. 8.

In the present case, however, Warr was not found in contempt in separate and distinct actions and then later prosecuted. Instead, she was found in contempt during the trial which led to her convictions. We are therefore unwilling to conclude that Warr may not now challenge the trial court's contempt findings. *See Troyer v. Troyer,* 867 N.E.2d 216, 220–21 (Ind.Ct. App.2007) (in appeal from marital dissolution action, court reviewed trial court's contempt finding stemming from same action).

Regardless, Warr's challenge to the trial court's contempt finding is without merit. Direct criminal contempt includes those actions occurring near the court, interfering with the business of the court, of which the judge has personal knowledge. *Davidson v. State,* 836 N.E.2d 1018, 1020 (Ind.Ct.App.2005). The power of Indiana courts to summarily punish for direct criminal contempt, while specified in Indiana Code section 34–47–2–1(a) (1999), rests upon the common law, and courts have inherent power to punish summarily acts of direct contempt without formal charges or an evidentiary hearing. *Davidson,* 836 N.E.2d at 1020. The purpose of this power is to enable the court to protect itself against gross violations of decency and decorum. *Id.* When reviewing a finding of contempt, we accept as true the statement entered by the trial court and will interfere with the judgment only where it clearly appears the acts do not constitute contemptuous acts. *Id.*

From the very beginning of the trial, Warr used extremely foul and profane language in the presence of the trial court judge, which we choose not to repeat. The trial judge then explained to her that if she wanted to proceed pro se, she could not interrupt the judge or anyone else and told her that she could not swear. The trial judge warned her that if she continued, he would find her in contempt of court. Despite this, Warr immediately used the same vulgar language. The trial judge gave Warr yet another

warning that if she continued to use that sort of language, she would be found in contempt and not allowed to proceed pro se.

Warr failed to heed the trial judge's warning, and continued to use vulgar and profane language in the presence of the trial judge, but not when the jury was present. At the conclusion of the trial, the trial court addressed the contempt issues, stating:

"I've been doing this for over ten years and I've never seen anybody as disrespectful to the Court as what you have or disrespectful to the system as what you have. You can control yourself. You do have that ability because you clearly didn't do it when the jury was here. But you did it when I was here. You interrupted me, you screamed and you yelled but the big thing is you swore twice, early on, even after I gave you two, as I called them[,] passes. Additionally, you questioned the Officer when I told you not to do it, about possible criminal proceedings and then you swore again. You have been found in contempt for all those. I held off entering a sentence because I wasn't quite sure how you were going to react and I didn't want to do anything that might add fuel to the fire, so to speak. I wanted to hold off till the end but I also wanted to give you an opportunity to maybe change your behavior to maybe mitigate the things that have happened. But it wasn't mitigated. Nothing changed. It just continued throughout. Like I said, I've been doing this for ten years, I've done murder cases and robberies and major felonies, I've never, ever seen anybody act continuously [sic] the way you have. I don't know what the problem is. I don't know. I understand you're upset but that doesn't excuse what goes on and just like, you would not tolerate that behavior from some-

body in your house, we can't tolerate that behavior from somebody in our courtroom. You would never put up with it, we're not going to put up with it."

Tr. pp. 278–79. Warr attempted to apologize for her behavior. The trial court sentenced Warr to 180 days in jail, but explained that if she wrote to the court explaining how she planned on dealing with her temper-control problems, he would be "happy" to reconsider the sentence. Tr. p. 282.

Based upon Warr's above-described behavior in court, it is apparent that Warr's behavior was contemptuous, disruptive, rude, and vulgar. The trial court was well justified in finding Warr in direct criminal contempt of court. *See Holly v. State*, 681 N.E.2d 1176, 1177–78 (Ind.Ct.App.1997) (trial court properly found defendant in direct contempt of court where defendant referred to the trial court judge by using profanity); *cf. Macon v. State*, 629 N.E.2d 883, 885 (Ind.Ct.App.1994) (pro se traffic court defendant's impolite but non-disruptive statements to trial court did not support finding of direct contempt).

## V. Sentence

Warr lastly complains that the trial court's sentences upon the contempt findings and the convictions are inappropriate. Appellate courts have the authority to revise a sentence if, after consideration of the trial court's decision, the court concludes the sentence is inappropriate in light of the nature of the offense and character of the offender. Ind. Appellate Rule 7(B) (2007).

■ With regard to the 180 days imposed by the trial court on the findings of direct criminal contempt, we agree that such a sentence is not insignificant. But it is proportionate to Warr's consistently disrespectful and outrageous behavior in

court. As noted by the trial court, Warr controlled herself in the presence of the jury, demonstrating that she could be properly respectful if she so desired. She nevertheless showed an extreme amount of disrespect toward the trial court outside of the presence of the jury. Considering this, and that the trial court told Warr that he would reconsider her sentence if she demonstrated that she would take affirmative steps to learn to control her temper, we cannot say that the imposed sentence was inappropriate.

 With regard to the sentences imposed upon Warr's convictions, we similarly conclude that such are not inappropriate. Warr was sentenced to an aggregate term of two years, with a total of sixty days incarceration, 120 days on home detention, and the remainder suspended to probation.[5] Considering the nature of Warr's offense, we observe that she escalated a dispute over brushing teeth into a felony. Considering Warr's character, we note that she demonstrated rude, insulting, and obstinate behavior on the day of her arrest and throughout her trial. We also note that Warr has a criminal history, including a 2002 conviction for B misdemeanor disorderly conduct and 1999 convictions for A misdemeanor battery and resisting law enforcement. Warr's probation in the 1999 convictions was revoked in part for her non-compliance with anger management counseling. Given Warr's continued problems with controlling her behavior, we cannot conclude that her sentence is inappropriate.

## Conclusion

In summary, Warr has not demonstrated that she was denied a fair trial because some jurors may have seen her in hand-

cuffs in the courtroom hallway; Warr has not shown any error in the trial court's exclusion of evidence; because she represented herself at trial, Warr may not now claim ineffective assistance of standby trial counsel; the evidence is sufficient to support Warr's convictions and the trial court's contempt findings; and the sentences imposed by the trial court are not inappropriate.

Affirmed.

NAJAM, J., and BRADFORD, J., concur.

5. The maximum sentence for a Class D felony is three years. Ind.Code § 35–50–2–7(a) (2005).