

**FILED**

Jun 30 2020, 6:11 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Ruth Johnson
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Ian McLean
Supervising Deputy Attorney
General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Robert Coleman,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

June 30, 2020

Court of Appeals Case No.
19A-CR-2336

Appeal from the Sullivan Superior
Court

The Honorable Hugh Hunt, Judge

Trial Court Cause No.
77D01-1810-F6-771

**Pyle, Judge.**

## Statement of the Case

Robert Coleman ("Coleman") was charged with Level 6 felony battery[1] based on his act of placing bodily fluid on a public safety official when he spit on a correctional officer at the prison where he was an inmate. A jury convicted Coleman of the offense, and he now appeals his conviction. He argues that, because the term "bodily fluid" is undefined in the battery statute, the battery statute was unconstitutionally vague and denied him due process. At the trial court level, Coleman used the lack of statutory definition as a defense theory to argue to the jury that the evidence was insufficient. Coleman, however, neither filed a motion to dismiss the charge against him nor otherwise raised a constitutional vagueness or due process challenge to the trial court. As a result, he has waived any such challenges on appeal. Waiver notwithstanding, we conclude that Coleman has failed to show that the statute was unconstitutionally vague and that he was not denied due process. Accordingly, we affirm his conviction.

We affirm.

---

[1] IND. CODE § 35-42-2-1. We note that our legislature amended the battery statute during the 2020 legislative session. The amended statute, which has an effective date of July 1, 2020, does not affect our analysis in this appeal.

# Issue

Whether the lack of a statutory definition of the term "bodily fluid" in the battery statute subjected Coleman to an unconstitutionally vague statute and denied him due process.

# Facts

On September 24, 2018, Coleman was an inmate at the Wabash Valley Correctional Facility ("WVCF"), serving his sentence for his 2017 convictions of conspiracy to commit armed robbery and false identity statement. Correctional Officers Dalton Rhinehart ("Officer Rhinehart") and Cole Banta (Officer Banta") were on duty at the prison that day. Coleman was housed in a secured housing unit of WVCF and was in a cell by himself. Inmates who are in the secured housing unit are required to remain in their cells all day except for taking a shower or having one hour of recreation per day. Unlike the general population cell doors, which contained a window, the secured housing unit cell doors are "honeycombed," containing "a lot of small holes all over them." (Tr. Vol. 2 at 61). The secure housing cell door also contains a "cuff port" that "has a locking mechanism on it that [is] turn[ed] with a key and when [it is] unlock[ed] . . . , it pulls out to be served a meal or . . . to apply restraints." (Tr. Vol. 2 at 61-62). The cuff port, otherwise, remains secured by being closed and locked.

As Officer Banta was picking up a dinner tray from Coleman through the cuff port, Coleman took "the cuff port hostage" by sticking his arm in the cuff port and not allowing Officer Banta to secure it. (Tr. Vol. 2 at 90). Officer Banta

instructed Coleman to remove his arm, and Coleman told Officer Banta that he wanted to speak with Officer Rhinehart. When Officer Rhinehart arrived at Coleman's cell, Coleman put his arm inside his cell, thereby allowing Officer Banta to secure the cuff port. Officer Rhinehart asked Coleman, "what's going on?" and Coleman "hocked a loogie" and "spit through the door[.]" (Tr. Vol. 2 at 64, 90, 102). Officer Banta saw "some fluid come out through th[e] perforations [of Coleman's cell door] and hit Officer Rhinehart in the face." (Tr. Vol. 2 at 90). After Officer Rhinehart felt the "warm and thick and bubbly" fluid on his face, he went to the control room where photographs were taken of his face, showing saliva on the officer's eyebrow, forehead, temple, and bridge of his nose. (Tr. Vol. 2 at 64).

[5] The State charged Coleman with Level 6 felony battery by bodily fluid or waste against a public safety official. Specifically, the State alleged that Coleman knowingly or intentionally, in a rude, insolent, or angry manner placed "bodily fluid" on Officer Rhinehart's face when Coleman "spit" on the officer while he was engaged in his official duties. (App. Vol. 2 at 18). Prior to trial, Coleman neither filed a motion to dismiss the charge against him nor otherwise raised a constitutional vagueness or due process challenge to the battery statute.

[6] On August 14, 2019, the trial court held a jury trial. Coleman had alternative theories for his defense. During opening arguments, Coleman's attorney stated that the State would not be presenting any DNA evidence to prove that the fluid on Officer Rhinehart's face was saliva, and he suggested that it could have been perspiration. His counsel also contended that, even if the fluid were

saliva, the evidence would not be sufficient because: (1) the statute did not define the term bodily fluid, suggesting that the legislature only meant the term bodily fluid to apply only to fluids containing "communicable diseases" such blood, urine, or feces and not saliva; (2) any saliva that Coleman may have gotten on Officer Rhinehart was merely an accident; (3) a fellow prison inmate would testify that he did not hear or see Coleman spit on Officer Rhinehart; and (4) the prison did not take a "corrective action" against Coleman such as putting up a plexiglass door or making him wear a mask. (Tr. Vol. 2 at 54).

[7] The State presented testimony from Officer Rhinehart and Officer Banta, who testified to the facts of the offense as set forth above. Additionally, Officer Rhinehart specifically testified that the fluid on his face was Coleman's saliva and not perspiration. The State also introduced, without objection, exhibits that included the photographs of Officer Rhinehart's face and a surveillance video taken from the prison's camera stationed near Coleman's cell.

[8] Coleman presented testimony from a prison inmate, who was in the prison cell next to Coleman's cell and who testified that he did not see or hear Coleman spit on Officer Rhinehart. Coleman also testified on his own behalf. Coleman admitted that he had stuck his hand in the cuff port but denied that he had spit on Officer Rhinehart. He also testified that he had been angry with Officer Rhinehart for refusing his previous request to pass an envelope to another inmate and that he "could have got [sic] some spit on [Officer Rhinehart]" when he was "cursing" and "talking loud" at the officer. (Tr. Vol. 2 at 115). Additionally, Coleman testified that he had been convicted of conspiracy to

commit armed robbery and false identity statement in 2017, false informing in 2013, and robbery in 2011.

[9] During closing argument, Coleman's counsel challenged the sufficiency of the evidence in the case, arguing that the State had failed to establish that the liquid on Officer Rhinehart was actually saliva instead of perspiration. His counsel argued the State was attempting to prove the case "with very little or no evidence" and that it should have DNA tested the liquid. (Tr. Vol. 2 at 123). Coleman's counsel also pointed out that the battery statute did not define the term "bodily fluid" and that the statute should be applied only to "blood, urine, feces; things that can cause infectious diseases." (Tr. Vol. 2 at 123). Counsel also argued that the statute was "overly broad" and told the jury that "it's up to you folks as to how you weigh this evidence and then look at the law and see if it's being fairly applied or . . . if it's overly broad that means it's unconstitutional[.]" (Tr. Vol. 2 at 124, 127). The jury found Coleman guilty as charged.

[10] During the September 2019 sentencing hearing, Coleman's counsel asked to make a "statement" in which he argued that the evidence was insufficient and that "saliva does not qualify as bodily waste." (Tr. Vol. 2 at 138). Counsel argued that the statute was "overly broad" and "arbitrarily applied[,]" and he opined that the statute was intended to apply to "blood and feces and urine; bodily fluids such as that, to prevent infectious diseases." (Tr. Vol. 2 at 138). Additionally, Coleman's counsel argued that the statute was "vague in that

regard when it says bodily fluid, with saliva being included as one of the bodily fluids[.]" (Tr. Vol. 2 at 138).

[11] The trial court imposed a two (2) year sentence at the Indiana Department of Correction and ordered Coleman to serve it consecutively to the sentence he had been serving. Coleman now appeals.

# Decision

[12] Coleman challenges his Level 6 felony battery conviction, arguing that, because the term "bodily fluid" was not defined in the battery statute, the battery statute was unconstitutionally vague and denied him due process. In response, the State cites to INDIANA CODE § 35-34-1-4[2] and contends that Coleman has waived these arguments because he failed to file a motion to dismiss the charging information or to otherwise raise those arguments, before or during trial, to the trial court for a ruling on such arguments. Coleman acknowledges

---

[2] INDIANA CODE § 35-34-1-4 provides, in relevant part, that:

> (a) The court may, upon motion of the defendant, dismiss the indictment or information upon any of the following grounds:
>
> * * * * *
>
> (4) The indictment or information does not state the offense with sufficient certainty.
>
> (5) The facts stated do not constitute an offense.
>
> * * * * *
>
> (b) Except as otherwise provided, a motion under this section shall be made no later than:
>
> (1) twenty (20) days if the defendant is charged with a felony; or . . .
>
> prior to the omnibus date. A motion made thereafter may be summarily denied if based upon a ground specified in subdivision (a)(1), (a)(2), (a)(3), (a)(4), or (a)(5) of this section. . . .

that he did not raise the arguments at trial but argues that the constitutionality of a statute may be raised at any stage of the proceeding, including on appeal.

[13] Our Indiana Supreme Court has held that "[g]enerally, the failure to file a proper motion to dismiss raising the Constitutional challenge waives the issue on appeal." *Payne v. State*, 484 N.E.2d 16, 18 (Ind. 1985). *See also Plank v. Cmty. Hosps. of Ind., Inc.*, 981 N.E.2d 49, 53 (Ind. 2013); *Baumgartner v. State*, 891 N.E.2d 1131, 1135 (Ind. Ct. App. 2008) (citing I.C. §§ 35-34-1-4 and -6).[3] However, our supreme court has also held that "the constitutionality of a statute may be raised at any stage of the proceeding including raising the issue *sua sponte* by this Court." *Morse v. State*, 593 N.E.2d 194, 197 (Ind. 1992) (addressing a defendant's challenge to the constitutionality of a statute even though the issue was raised for the first time in a *pro se* motion filed with the Court by a defendant who was represented by appellate counsel who did not raise the issue in the appellant's brief), *reh'g denied*. "Essentially, *Morse* stands for the proposition that appellate courts are not prohibited from considering the constitutionality of a statute even though the issue otherwise has been waived[,] [a]nd indeed a reviewing court may exercise its discretion to review a

---

[3] INDIANA CODE § 35-34-1-6 provides, in relevant part, that:

    (a) An indictment or information is defective when:

        (1) it does not substantially conform to the requirements of section 2(a) of this chapter;

        * * * * *

        (3) the statute defining the offense charged is unconstitutional or otherwise invalid.

constitutional claim on its own accord." *Plank*, 981 N.E.2d at 53-54. *See also*

*McBride v. State*, 94 N.E.3d 703, 709-10 (Ind. Ct. App. 2018) (listing cases from

the Indiana Supreme Court and our Court in which constitutional challenges to

a statute were addressed despite the failure to file a motion to dismiss).

Accordingly, we will address the merits of Coleman's arguments, waiver

notwithstanding.

[14]     Although we will address Coleman's arguments, we note that our decision to

do so does not equate to an endorsement of a defendant's failure to file a

motion to dismiss when he has a constitutional challenge to a statute. Indeed,

we echo the prudent warning set forth by our Court in *Tooley v. State*: "We

caution that our decision to reach the merits is not an invitation to neglect to

file a motion to dismiss and then argue for the first time on appeal that the

statute is unconstitutional." *Tooley v. State*, 911 N.E.2d 721, 723 n.3 (Ind. Ct.

App. 2009), *trans. denied*.

[15]     The constitutionality of statutes is reviewed *de novo*. *Conley v. State*, 972 N.E.2d

864, 877 (Ind. 2012), *reh'g denied*. "Such review is 'highly restrained' and 'very

deferential,' beginning 'with [a] presumption of constitutional validity, and

therefore the party challenging the statute labors under a heavy burden to show

that the statute is unconstitutional.'" *Id.* (quoting *State v. Moss-Dwyer*, 686

N.E.2d 109, 110 (Ind. 1997)). "[I]f a statute has two reasonable interpretations,

one constitutional and the other not, we will choose the interpretation that will

uphold the constitutionality of the statute." *Morgan v. State*, 22 N.E.3d 570, 573-74 (Ind. 2014) (internal quotation marks and citations omitted).

"A fundamental aspect of our nation's jurisprudence is that criminal statutes must give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden so that no man shall be held criminally responsible for conduct which he could not reasonably understand to be proscribed." *Lock v. State*, 971 N.E.2d 71, 74 (Ind. 2012) (internal quotation marks and citations omitted). "[D]ue process requires that a penal statute clearly define its prohibitions." *Id.* (internal quotation marks and citations omitted).

"A criminal statute can be found unconstitutionally vague: (1) for failing to provide notice enabling ordinary people to understand the conduct that it prohibits[;] or (2) for the possibility that it authorizes or encourages arbitrary or discriminatory enforcement." *Morgan*, 22 N.E.3d at 573 (internal quotation marks and citations omitted). Here, Coleman does not argue that there was arbitrary enforcement; instead, he argues that the statute did not provide him with "notice that his conduct was criminally proscribed." (Coleman's Br. 12). A statute, however, "need only inform the individual of the generally proscribed conduct; it need not list with exactitude each item of prohibited conduct." *Baumgartner*, 891 N.E.2d at 1136. "A statute will not be held to be unconstitutionally vague if individuals of ordinary intelligence would comprehend it adequately to inform them of the proscribed conduct." *Id.* "[A] statute is void for vagueness only if it is vague as applied to the precise circumstances of the present case." *Id.* Additionally, a "defendant is not at

liberty to devise hypothetical situations which might demonstrate vagueness."

*Id.*

[18] Turning to the facts and circumstances of the present case, Coleman challenges the constitutionality and the due process implications of the battery statute, INDIANA CODE § 35-42-2-1, which provides, in relevant part:

> (c) Except as provided in subsections (d) through (k), a person who knowingly or intentionally:
>
>> (1) touches another person in a rude, insolent, or angry manner; or
>>
>> (2) in a rude, insolent, or angry manner places any *bodily fluid* or waste on another person;
>
> commits battery, a Class B misdemeanor.
>
> * * * * *
>
> (e) The offense described in subsection (c)(1) or (c)(2) is a Level 6 felony if one (1) or more of the following apply:
>
> * * * * *
>
>> (2) The offense is committed against a public safety official while the official is engaged in the official's official duty.

IND. CODE § 35-42-2-1 (emphasis added). To convict Coleman for battery as charged, the State was required to establish beyond a reasonable doubt that Coleman knowingly or intentionally, in a rude, insolent, or angry manner, placed bodily fluid on Officer Rhinehart when he spat on him.

[19] We first address Coleman's constitutional vagueness challenge. Coleman generally argues that "[w]ithout a statutory definition that specifically includes saliva as a bodily fluid, [he] was not on notice that his conduct was criminally proscribed, thus the statute is unconstitutionally vague as applied to [him.]" (Coleman's Br. 12). He asserts that bodily fluid "could include many things such as tears or mucus, and reasonable minds can differ as to whether saliva is a 'bodily fluid.'" (Coleman's Br. 12).

[20] First and foremost, we reject Coleman's argument that the battery statute is unconstitutionally vague because it does not define saliva as a bodily fluid. "[A] criminal statute does not need to provide an express or explicit list of prohibited conduct with scientific precision, however much we might think it helpful." *Lock*, 971 N.E.2d at 75. Indeed, "[c]ondemned to the use of words, we can never expect mathematical certainty from our language." *Id.* (quotation marks and citation omitted).

[21] Additionally, we reject Coleman's suggestion that the battery statute is vague because other fluids, which are not at issue in this case, may be included as a bodily fluid. Coleman "is not at liberty to devise hypothetical situations which might demonstrate vagueness." *Baumgartner*, 891 N.E.2d at 1136. Instead, we focus on the precise circumstances of the present case and whether a person of ordinary intelligence would comprehend the battery statute to adequately inform him/her that spitting, or placing saliva, on another person's face was included in the proscribed conduct. Because our analysis centers on how an ordinary person would interpret the statute, we turn to standard language

dictionaries definitions of bodily fluid. *See Lock*, 971 N.E.2d at 75. These dictionary definitions make clear that saliva is a bodily fluid.[4] Thus, a person of ordinary intelligence would, from the phrase "bodily fluid" as used in the battery statute, know that spitting or placing saliva, on another person's face was included in the proscribed conduct of placing bodily fluid on another person. Accordingly, Coleman's argument that the battery statute is unconstitutionally vague fails. *See, e.g.*, *Tooley*, 911 N.E.2d at 723 (rejecting the defendant's argument that undefined terms in a statute rendered the statute unconstitutionally vague); *Boyd v. State*, 889 N.E.2d 321, 325 (Ind. Ct. App. 2008) (rejecting the defendant's claim that domestic battery statute was unconstitutionally vague), *trans. denied*.

[22] Next, we turn to Coleman's due process argument. Coleman contends that he was denied due process because the legislature's failure to specifically define saliva as being a "bodily fluid" resulted in a conviction based upon less than proof beyond a reasonable doubt and insufficient evidence. Coleman has abandoned his argument raised below to the jury, asserting that bodily fluid should apply only to blood, feces, urine, or any bodily fluids that may pass

---

[4] *See, e.g.*, Cambridge Dictionary online, https://dictionary.cambridge.org/us/dictionary/english/bodily (last visited June 17, 2020) [https://perma.cc/CP68-D9Z6] (defining "bodily" as "relating to the human body" and giving a context example of "bodily fluids (= blood, saliva, etc.)"); American Heritage Dictionary of the English Language online, https://ahdictionary.com/word/search.html?q=body+fluid (last visited June 17, 2020) [https://perma.cc/2JHV-32X9] (defining "body fluid" as "[a] natural bodily fluid or secretion of fluid such as blood, semen, or saliva"); Merriam Webster Dictionary online, https://www.merriam-webster.com/medical/body%20fluid (last visited June 17, 2020) [https://perma.cc/PE8Q-VEND] (defining "body fluid" as "a fluid or fluid secretion (such as blood, lymph, saliva, semen, or urine) of the body").

infectious diseases.[5]  Instead, Coleman contends that the term "bodily fluid" is ambiguous.  Coleman points out that—for purposes of INDIANA CODE § 35-45-16-2, the malicious mischief with food statute—the legislature defined "body fluid" as including saliva.[6]  He asserts that "[i]t would have been simple for the legislature to include a definition of bodily fluid in the battery statute" and that the legislature's failure to do so "allow[ed] the jury discretion to determine that saliva is a bodily fluid."  (Coleman's Br. 10).  As a result, Coleman asserts that he was denied due process because the asserted ambiguity in the battery statute allowed the jury to convict him based upon less than proof beyond a reasonable doubt.

[23]  Again, we reject Coleman's argument regarding the lack of definition of bodily fluid.  *See Lock*, 971 N.E.2d at 75 ("[A] criminal statute does not need to provide an express or explicit list of prohibited conduct with scientific precision, however much we might think it helpful.").  Furthermore, Coleman's argument is essentially attacking the sufficiency of the evidence to support his conviction, and we will review it as such.

[24]  "When reviewing the sufficiency of the evidence to support a conviction, appellate courts must consider only the probative evidence and reasonable

---

[5] We note that the battery statute addresses battery that involves diseases.  *See* I.C. §§ 35-42-2-1(f),(h) (discussing battery involving hepatitis, tuberculosis, or human immunodeficiency virus).

[6] INDIANA CODE § 35-45-16-2 defines "body fluid" as blood, saliva, sputum, semen, vaginal secretions, human milk, urine, sweat, tears, any other liquid produced by the body, or any aerosol generated form of liquids listed.

inferences *supporting* the verdict[,]" and we will neither assess witness credibility nor reweigh the evidence. *Drane v. State*, 867 N.E.2d 144, 146 (Ind. 2007) (internal quotation marks and citation omitted) (emphasis in original). We will affirm a conviction "unless no reasonable factfinder could find the elements of the crime proved beyond a reasonable doubt." *Id.* (internal quotation marks and citation omitted). Additionally, our Indiana Supreme Court has explained that "when determining whether the elements of an offense are proven beyond a reasonable doubt, a fact-finder may consider both the evidence *and the resulting reasonable inferences*." *Thang v. State*, 10 N.E.3d 1256, 1260 (Ind. 2014) (emphasis in original).

[25]     Here, the evidence showed that when Officer Rhinehart went to see Coleman at his secured housing cell door, Coleman "hocked a loogie" and "spit through the door[.]" (Tr. Vol. 2 at 64, 90, 102). Officer Banta saw "some fluid come out through th[e] perforations [of Coleman's cell door] and hit Officer Rhinehart in the face." (Tr. Vol. 2 at 90). After Officer Rhinehart felt the "warm and thick and bubbly" fluid on his face, he went to the control room where photographs were taken of his face, showing saliva on the officer's eyebrow, forehead, temple, and bridge of his nose. (Tr. Vol. 2 at 64). Additionally, the jury was specifically instructed that the State had the "strict and heavy" burden to prove the elements of the battery offense beyond a reasonable doubt and that the jury could find Coleman guilty only if the State had met that burden. (Tr. Vol. 2 at 130; App. Vol. 2 at 127). Thus, the jury did not apply less proof than beyond a reasonable doubt, and Coleman was not denied due process.

[26] The jury, as finder of fact, determined that the State had met its burden of proving beyond a reasonable doubt that Coleman knowingly or intentionally placed bodily fluid on Officer Rhinehart in a rude, insolent, or angry manner when he spat on him. Coleman argued to the jury that the fluid may have been perspiration instead of saliva, that saliva was not a bodily fluid, and that he never intentionally spat on the officer; but the jury, by its verdict, rejected his arguments. Coleman's argument is simply a request to reweigh the evidence and reassess the trial court's credibility determination, which we will not do. *See Drane*, 867 N.E.2d at 146. Accordingly, we affirm Coleman's battery conviction. *See, e.g.*, *Warr v. State*, 877 N.E.2d 817, 824 (Ind. Ct. App. 2007) (affirming a defendant's battery conviction where—based on the evidence that the defendant "spat" on an officer's face—"the jury could conclude that [the defendant] knowingly placed a body fluid on a law enforcement officer in a rude, insolent, or angry manner while the officer was engaged in the performance of official duties"), *trans. denied*.

[27] Affirmed.

May, J., and Crone, J., concur.