


FILED
May 09 2025, 9:04 am
CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

I N T H E

# Court of Appeals of Indiana

Mylik J. Hill,

*Appellant-Defendant*

v.

State of Indiana,

*Appellee-Plaintiff*

---

May 9, 2025

Court of Appeals Case No.
24A-CR-849

Appeal from the Marion Superior Court

The Honorable Angela Davis, Judge

Trial Court Cause No.
49D27-2203-F1-006320

---

**Opinion by Judge Felix**
Judges Mathias and Foley concur.

**Felix, Judge.**

## Statement of the Case

After responding to a hit-and-run, law enforcement officers found Mylik Hill parked on a street nearby. As officers approached Hill, he fled the officers and shot at two of them, significantly wounding one, Officer Tommy Mangan. The State charged Hill with attempted murder, resisting law enforcement, and unlawful possession of a firearm. Following a jury trial where Hill chose to proceed pro se, he was found guilty as charged. Hill appeals and presents two issues for our review:

1. Whether the trial court committed structural error when it advised Hill that an ineffective assistance of counsel claim could not be raised on appeal; and
2. Whether Hill's convictions for resisting law enforcement violated Indiana's protections against double jeopardy.

We affirm in part, reverse in part, and remand with instructions.

## Facts and Procedural History

On the night of February 27, 2022, Hill got into an auto accident with another vehicle and left the scene. Several Indianapolis Metropolitan Police officers, including Officers Daniel Majors and Tommy Mangan, responded to the hit-and-run call.

After arriving at the scene of the accident and being told in which direction Hill left the scene, officers were able to locate Hill parked on the side of a nearby street. As Officer Majors approached Hill's car, Hill "began to flee" from the

six officers who were present. Tr. Vol. IV at 125. Officer Majors and Officer Mangan chased Hill. Just as Officer Mangan caught up to Hill and attempted to grab him, Hill turned and shot Officer Mangan in the neck. This single shot devastated Officer Mangan's life, destroying his left and right vocal cords as well as fracturing his neck.

[5] Hill continued to flee. Now being chased by only Officer Majors, Hill pointed the firearm at Officer Majors and fired another round, which luckily did not hit Officer Majors. Officer Majors fired multiple rounds at Hill, and, with the help of the other four law enforcement officers, returned Officer Mangan to safety. Hill was arrested later that night.

[6] The State charged Hill with two counts of attempted murder as Level 1 felonies,[1] six counts of resisting law enforcement as Level 6 felonies,[2] and one count of unlawful possession of a firearm by a serious violent felon[3]. Early in the proceedings, Hill was appointed a public defender. At a status conference on February 23, 2023, Hill told the trial court he wished to proceed pro se. After the trial court explained the disadvantages, pitfalls, and risks of proceeding pro se, and described how his attorney would assist him in the discovery process, Hill agreed to continue with appointed counsel. In May,

---

[1] Ind. Code §§ 35-42-1-1(1), 35-41-5-1(a).

[2] *Id.* § 35-44.1-3-1(a)(3), (c)(1)(B)(i).

[3] *Id.* § 35-47-4-5(c).

Hill secured private counsel, but on November 20, Hill's private counsel withdrew his representation.

[7] At a hearing a week later, Hill expressed his intent to continue pro se and explained his reasoning as follows: " . . . I took [the trial court's] advice last time, and I got manipulated. I got lied to and everything by the public defender." Tr. Vol. II at 75. The trial court explained the implications of proceeding pro se:

> [Y]ou have an absolute right to go pro se. But you are solely responsible for conducting any voir dire. You're solely responsible for challenging any prospective jurors. You are responsible for making opening and closing statements. And you have to abide by the rules of evidence. Do you have a copy of the rules of evidence so that you can go over those to know what they are? Because you're -- you're presumed to know what they are.
>
> * * *
>
> [A]n attorney would be better at investigation and interrogation, and generally have better skills than you would, right? Because they went to law school.
>
> * * *
>
> I believe it is always better to have an attorney. But that's the just the Court's opinion, and the Supreme Court has told me that you are absolutely entitled, and I cannot stop you from . . . representing yourself. But I can talk to you -- that you do not -- you cannot, you know, be abusive or disruptive or threatening. And you understand the charges against you and that there are

possibility [sic] of lesser included offenses. Do you -- you need to be able to articulate those, and if you want to have the jury consider those, you have to file those motions.

*Id.* at 77, 79, 80. Hill proceeded pro se.

[8] On January 5, 2024, Hill filed a motion requesting the appointment of standby counsel, in part asking for "the assistance of counsel for defense." Appellant's App. Vol. III at 34. On January 8, Hill appeared for a hearing, and the trial court explained his options:

> Right now, you have asked for a motion for appointment of standby counsel. But then, in reading your motion, you are asking for the assistance of counsel for defense. You may not have that. You had a lawyer. You fired them. You had a public defender. You asked to represent yourself. You do not get assistance from counsel. If you want a public defender appointed, and you cannot afford one, Court is happy to do so. I will appoint standby counsel who will sit there and do nothing; cannot answer any questions; cannot help you; cannot provide any assistance whatsoever. They're just allowed to sit in the Courtroom and be standby unless -- until you decide that you don't want to represent yourself, which you have an absolute right to, which you are, and the Court is allowing you to do.

Tr. Vol. II at 113–14.

[9] On January 30, at the final hearing before the trial, the trial court further explained to Hill the implications of proceeding pro se, and Hill again expressed his intent to proceed pro se. The following exchange occurred:

THE DEFENDANT, MR. HILL: Well, I'm fully aware of my Pro Se, and I feel like I'm capable, and I want to exercise my right to go Pro Se.

THE COURT: You absolutely have a right. But you have to understand what you're doing. And you are solely responsible for preserving any issues for appeal, if -- if you are found guilty, or at a sentencing phase. And you further understand that you are waiving any appeal issue based on ineffective representation of counsel --

THE DEFENDANT, MR. HILL: Yes, Your Honor.

THE COURT: *So, if you are ineffective, you are waiving that issue.*

THE DEFENDANT, MR. HILL: I understand, Your Honor.

THE COURT: An attorney would be better at investigation, interrogation, and negotiations. Attorney could evaluate any potential defense and evidentiary or procedural problems. You being incarcerated is a disadvantage. You tell me every single time you come to Court that you don't have enough time in the law library, you don't have access to a computer, you can't use your ZIP drives whenever you want. An attorney has access to a computer twenty-four (24) hours a day, seven (7) days a week. And you do not want to use an attorney?

THE DEFENDANT, MR. HILL: Absolutely not, Your Honor.

THE COURT: Alright. You understand that you may conduct a defense that is your own detriment.

THE DEFENDANT, MR. HILL: Yes, ma'am.

Tr. Vol. II at 203–04 (emphasis added). The trial court appointed standby counsel that day.

[10] On February 13, Hill's jury trial began. Hill participated in every aspect of the trial on his own. On the third and final day of trial, while he was cross-examining the State's second-to-last witness, Hill, realizing that he was not being as effective as he thought he could be, told the trial court, "At this point I done did all I can do for myself, Pro Se. And I wish not to go farther any longer." Tr. Vol. VI at 67. As this discussion proceeded, the State interjected a concern that Hill was now requesting counsel in an attempt to be able to raise an ineffective assistance of counsel claim on appeal. In response, Hill said, "Well, I don't even know what she talking about. I'm doing this because I'm being honest with the Court. I just feel like I can't go on no longer. I'm not getting -- we not getting nowhere." *Id.* at 68. Later, during this prolonged discussion, the trial court explained to Hill, "You said you understood that if you did -- got rulings that were not in your favor, that you were *giving up your right to say you were ineffective*." *Id.* at 71 (emphasis added). The trial court then allowed Hill to discuss his options with standby counsel during the lunch recess.

[11] Following the recess, Hill asked the trial court if he could later claim ineffective assistance of counsel. The trial court explained:

> You are waiving -- and you have already waived your ineffective assistance of counsel because you chose to represent yourself. The Court has advised you on numerous occasions, including

just a couple weeks ago where I appointed the pub[l]ic defender because you couldn't afford an attorney, and you fired them. And you are waiving your ineffective assistance of counsel. With that, you do have standby counsel here who has been here the entire trial. If you wish not to represent yourself, I will appoint your standby counsel to fill in to finish the last witness and a half and do closing for you. If you wish to continue to represent yourself, you may. Now that you understand the true pitfalls in representing yourself.

Tr. Vol. VI at 76–77. Hill then asked if he had waived the ineffective assistance claim even if standby counsel took over and the trial court replied, "Correct. You have waived that." *Id.* at 77. Hill then conducted the remainder of the trial pro se. The jury found Hill guilty as charged. Hill now appeals.

## Discussion and Decision

### 1. The Trial Court Did Not Commit Structural Error

[12] Hill claims that the trial court committed structural error by depriving him of his right to counsel. Structural errors represent "'a limited class of fundamental constitutional errors that defy analysis by harmless error standards,' thus requiring automatic reversal without the need to show prejudice." *Durden v. State*, 99 N.E.3d 645, 653 (Ind. 2018) (quoting *Neder v. United States*, 527 U.S. 1, 7 (1999)). "These errors . . . affect 'the framework within which the trial proceeds, rather than simply an error in the trial process itself.'" *Id.* (quoting *Arizona v. Fulminante*, 499 U.S. 279, 310 (1991)). The deprivation of counsel is a structural error that "always result[s] in prejudicial harm to the defendant." *Id.* (citing *Weaver v. Massachusetts*, 582 U.S. 286, 296 (2017)).

[13] Hill points us to the third day of the jury trial for this alleged structural error. There, after a lengthy discussion about the implications of using standby counsel, Hill asked if he had waived a future ineffective assistance of counsel claim if standby counsel finished the trial; the trial court told Hill that he had waived that claim. Hill argues that the trial court's statement was error and resulted in the deprivation of counsel. We cannot agree.

[14] The trial court correctly informed Hill that he had waived his right to pursue a claim of ineffective assistance of counsel on appeal. "[A] defendant who chooses to proceed pro se must accept the burdens and hazards of self-representation and may not assert a Sixth Amendment claim of ineffective assistance of counsel." *Warr v. State*, 877 N.E.2d 817, 823 (Ind. Ct. App. 2007) (citing *Carter v. State,* 512 N.E.2d 158, 162 (Ind. 1987)). "Whether a defendant may claim ineffective assistance from standby counsel depends on whether hybrid representation is more akin to a defendant proceeding pro se or is more akin to a defense controlled by counsel." *Id.* (citing *Henson v. State,* 798 N.E.2d 540, 546 (Ind. Ct. App. 2003)). Hill's argument largely relies on his assumption that "standby counsel likely would have conducted the rest of the trial," Appellant's Br. at 18–19, but there is little support for this in the record. The record shows that Hill proceeded pro se because he had continual dissatisfaction with his representation. As noted in his reply brief, Hill "repeatedly told the trial court at pre-trial hearings that he distrusted public defenders, and believed they had lied to him and compromised his case."

Appellant's Reply. Br. at 6–7. There is nothing to suggest that this trend would have stopped with Hill's newly appointed standby counsel.

[15] Even assuming standby counsel finished the trial, we are unconvinced that an ineffective assistance of counsel claim would have been available. Importantly, Hill asked standby counsel to step in on the last day of trial during the State's second-to-last witness. Had counsel had an opportunity to complete the trial, without Hill firing another appointed attorney, counsel would have finished the cross examination of two witnesses, conducted direct examination of Hill, assisted with final instructions, and made a closing argument. The groundwork was laid by this point in the trial, and Hill had already been disadvantaged by his own ineffective advocacy. We do not believe, with the few remaining tasks to be completed, that counsel would have been able to present a defense that was controlled by counsel. *See Warr*, 877 N.E.2d at 823. We conclude that the trial court did not err in telling Hill that his ineffective assistance of counsel claim was unavailable.

[16] Even if we were to conclude that counsel presented a counsel-led defense, we do not believe that, under the totality of the record, the trial court's final statement to Hill about waiving an ineffective assistance claim meant that he had waived the claim entirely -- even as to ineffectiveness of standby counsel. At the final pretrial conference, the trial court told Hill, "So, if *you* are ineffective, you are waiving that issue." Tr. Vol. II at 204 (emphasis added). Hill stated he understood. And, during the prolonged discussion about whether to request counsel in the middle of trial, the trial court stated, "You said you

understood that if you did -- got rulings that were not in your favor, that you were giving up your right to say *you* were ineffective." Tr. Vol. VI at 71 (emphasis added). With both of these advisements, the trial court made it clear that any ineffectiveness claim regarding Hill's own conduct was being waived. Regardless, any deprivation of counsel that occurred was of Hill's own doing. Despite the trial court warning Hill about the pitfalls of pro se representation and providing every opportunity for Hill to take advantage of appointed counsel, Hill repeatedly chose to proceed pro se. We conclude that the trial court did not deprive Hill of counsel and therefore did not commit structural error.

## 2. Hill's Resisting Law Enforcement Convictions Violate Protections Indiana's Protections Against Double Jeopardy

[17] Hill claims that the trial court violated protections against double jeopardy. We review double jeopardy claims de novo. *A.W. v. State*, 229 N.E.3d 1060, 1064 (Ind. 2024) (citing *Wadle v. State*, 151 N.E.3d 227, 237 (Ind. 2020); *Powell v. State*, 151 N.E.3d 256, 262 (Ind. 2020)). Indiana's protection against substantive double jeopardy prohibits "multiple convictions for the same offense in a single proceeding." *A.W.*, 229 N.E.3d at 1066. Hill claims that his six convictions for resisting law enforcement violate protections against double jeopardy. The State agrees, and so do we.

[18] Because Hill's convictions for resisting law enforcement stem from multiple violations of the same statute, we conduct our analysis set forth in *Powell v. State*. 151 N.E.3d at 263–64. Initially, we look to the statute to determine

"whether expressly or by judicial construction, indicates a unit of prosecution, then we follow the legislature's guidance and our analysis is complete." *Id.* at 264. "[I]f the statute is ambiguous, then we proceed to the second step of our analysis." *Id.* There, to determine whether the facts show a single offense or distinguishable offenses, we ask "whether the defendant's actions are 'so compressed in terms of time, place, singleness of purpose, and continuity of action as to constitute a single transaction.'" *Id.* (quoting *Walker v. State*, 932 N.E.2d 733, 735 (Ind. Ct. App. 2010)). Here, the relevant portion of the resisting law enforcement statute does not indicate a unit of prosecution. *See* Ind. Code § 35-44.1-3-1(a)(3), (c)(1)(B)(i). At the second step, the charging information and the facts at trial clearly show that Hill fled all six officers in a single act, resulting in the six charges of resisting law enforcement. Thus, Hill's convictions for resisting law enforcement violated protections against double jeopardy.[4]

## Conclusion

[19] In sum, the trial court did not commit structural error in advising Hill that he had waived a future ineffective assistance of counsel claim, and Hill's resisting law enforcement convictions violate Indiana's protections against double jeopardy. We affirm in part and reverse in part with instructions for the trial

---

[4] Because we agree with Hill's double jeopardy claim, we need not address his claim that these convictions be vacated on statutory grounds.

court to vacate five of the resisting law enforcement convictions and their corresponding sentences.

[20] Affirmed in part, reversed in part, and remanded with instructions.

Mathias, J., and Foley, J., concur.

ATTORNEYS FOR APPELLANT

Talisha R. Griffin
Indianapolis, Indiana

Matthew D. Anglemeyer
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Theodore E. Rokita
Indiana Attorney General

George P. Sherman
Supervising Deputy Attorney General
Indianapolis, Indiana